NO. 07-00-0221-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 16 , 2001

_____

IBP, INC., APPELLANT

V.

STEVEN M. KLUMPE AND JEFF BLACKBURN,  APPELLEES

_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 84,777-B; HONORABLE SAMUEL KISER, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

The Motion for Rehearing of appellees Klumpe and Blackburn is denied.  Our opinion dated September 11, 2001, is withdrawn and the following opinion is issued in its place.

Appellant IBP, Inc., appeals from an adverse summary judgment in its suit based upon actions of appellee Steven M. Klumpe in obtaining and furnishing documents containing alleged trade secrets to Klumpe's attorney, appellee Jeff Blackburn, who then

provided them in discovery to attorneys who represented Klumpe's stepson in a personal injury suit against IBP. IBP urges, as to the summary judgment in favor of Klumpe and Blackburn that the combined affirmative-evidence and no-evidence motions for summary judgment were erroneously granted because Klumpe and Blackburn did not seek summary judgment on all of the causes of action alleged by IBP, and because, as to the grounds Klumpe and Blackburn presented in seeking summary judgment, (1) IBP presented evidence creating genuine material fact issues on each element of its claims challenged by the no-evidence parts of the motions, including damages, (2) affidavits supporting the affirmative-evidence parts of Klumpe and Blackburn's motions were defective, and (3) the actions of Klumpe and Blackburn were not privileged.

We affirm in part and reverse and remand in part.

## I. BACKGROUND

In April, 1997, Klumpe and his stepson, Chris Escamilla, were employed by IBP at its Amarillo, Texas, meat processing facility. Escamilla was a laborer in the slaughter department; Klumpe was a superintendent in the department.

On April 3, 1997, Escamilla suffered injuries to his hand while operating a meat cutting machine called the "hock-cutter machine." Escamilla consulted Blackburn in regard to his injury. Blackburn referred Escamilla to attorneys at the law firm of Fadduol and

Glasheen, P.C. ("Fadduol & Glasheen," or "the law firm").[1] Fadduol & Glasheen filed suit for damages against IBP and Escamilla's supervisor based on Escamilla's injury ("the Escamilla suit").[2] Pleadings in the Escamilla suit included allegations of inadequate staffing and negligent production procedures on the part of IBP.

Before Escamilla's injury, IBP had promulgated guidelines for various aspects of its production processes. The guidelines were incorporated into documents called "Crewing Guides." The Crewing Guides ("the Guides") were developed from time-motion studies of IBP's production employees and processes. IBP spent considerable sums[3] to develop the Guides as part of attempts to reduce its costs of production. According to the affidavit of James Crow, the personnel manager of IBP's Amarillo plant, the information contained in the Guides gave IBP a competitive advantage over competitors who had no knowledge of the Guides or did not use the Guides in their business. Crow's affidavit set out that (1) IBP considered the Guides a trade secret and protected the Guides' contents by way of various security procedures, such as limiting the number of hard copies of the Guides and by limiting the number of employees allowed access to the Guides; (2) all of IBP's employees

---

[1]IBP originally sued Klumpe and Blackburn and attorneys Kevin Glasheen, Sam Fadduol and Fadduol & Glasheen, P.C. Summary judgment was granted by the trial court in favor of all the defendants. IBP appealed as to all defendants. Subsequent to oral submission IBP settled with Glasheen, Fadduol and Fadduol & Glasheen, P.C. Accordingly, we address only those matters presented by the summary judgment motions of Blackburn and Klumpe and IBP's appellate issues as to those motions.

[2]IBP did not provide worker's compensation insurance. See TEX. LAB. CODE ANN. § 406.001, *et. seq.* (Vernon 1996 & Supp. 2001).

[3]IBP provided evidence that it spent several million dollars to develop the Guides.

3

were required to sign agreements not to disclose IBP's trade secrets and confidential and proprietary information; (3) part of the measures taken to prevent unauthorized disclosure was to limit access to the Guides; (4) employees signed non-disclosure agreements in regard to "trade secret, technical information or business information" of IBP not available to the public; and (5) Klumpe did not have authorization to remove the Guides from IBP's facility. As a superintendent, Klumpe had access to the Guides and signed a non-disclosure agreement. Klumpe also signed Conflict of Interest commitments whereby he agreed that he would not, for his or anyone else's gain, make use of or disclose confidential information learned as a result of his employment with IBP.

As part of the discovery process in the Escamilla suit, Fadduol & Glasheen[4] noticed the deposition of Klumpe. The deposition notice directed Klumpe to produce certain documents and tangible things at his deposition. One of the 13 itemized requests was "Any and all documents which show the crewing guidelines for…" the hock-cutter machine being operated by Escamilla at the time of his injury. The deposition notice was served on attorney Ken Muncy, counsel for IBP, and on Blackburn, who was Klumpe's personal attorney. Blackburn had previously notified Muncy that Blackburn represented Klumpe and that contacts with Klumpe about the Escamilla suit should include Blackburn. Muncy, therefore, advised Fadduol & Glasheen that Klumpe's deposition should be arranged through Blackburn.

---

[4]Various aspects of the Escamilla case were handled by different attorneys with the law firm. Discovery was primarily conducted by attorney Chris Carver.

4

After service of the deposition notice, Klumpe delivered certain documents to Blackburn, including a copy of the Guides which Klumpe took from his office at IBP's plant. The copy of the Guides furnished to Blackburn contained 18 pages of crewing information as to the job on which Escamilla was injured and other jobs at IBP's plant.

IBP filed objections and a motion for protective order in regard to certain of the documents which Klumpe had been directed to produce at his deposition, including the Guides. A copy of the motion was faxed to Blackburn. Muncy advised Klumpe via telephone call that IBP considered certain of the documents requested by Fadduol & Glasheen to be confidential IBP materials. Attorneys Muncy and Blackburn scheduled a meeting for Monday, June 30th, to review documents Klumpe possessed which would be responsive to the deposition notice. On Sunday, June 29th, in response to a letter request from Faddoul & Glasheen for "informal discovery" of all documents provided to Blackburn by Klumpe, Blackburn faxed copies of documents, including all the Guides, to Fadduol & Glasheen. On June 30th, Muncy learned that Blackburn had faxed copies of documents including the Guides to Fadduol & Glasheen, and contacted Fadduol & Glasheen. A Rule 11 agreement was reached whereby the faxed documents were to be kept confidential by Fadduol & Glasheen until a hearing could be held to determine the privileged nature of the documents.

An amended motion for protective order was then filed by IBP seeking (1) determination by the trial court in the Escamilla suit that certain of the documents faxed by Blackburn, including the Guides, were privileged under TEX. R. EVID. 507 (trade secrets)

5

and (2) an order protecting the confidential nature of the documents. Following hearing on IBP's Motion for Protective Order, the trial court ordered that the Guides faxed by Blackburn to Fadduol & Glasheen were not to be disclosed to any third parties other than witnesses or consulting experts as necessary for prosecution of the Escamilla suit.

The Escamilla suit settled during trial. Final judgment was entered on May 21, 1998. The previously-entered protective order was not specifically addressed by the judgment, although the judgment provided that all relief "not expressly granted herein is denied."[5]

While the Escamilla suit was pending, IBP sued Klumpe and Blackburn and Fadduol & Glasheen in the suit now before us ("the IBP suit"), seeking injunctive relief, damages, an accounting and attorney's fees. The underlying basis for the suit was that the Guides were trade secrets of IBP and Klumpe had contractual, common-law and statutory obligations not to take the Guides, disclose the Guides or use the Guides for either personal gain or gain of any other person. Based on the trade secret status of the Guides, Klumpe's obligations and the taking of and production of the Guides by Klumpe and Blackburn, IBP asserted causes of action for (1) misappropriation of trade secrets; (2)

---

[5]The parties do not discuss and we do not address the trial court's continuing power post-judgment, if any, to inquire into pre- and post-judgment compliance with its September 29, 1997 protective order and to enforce the order. See TEX. GOV'T CODE ANN. § 21.001(a), (b) (Vernon Supp. 2001); Sutphin v. Tom Arnold Drilling Contractor, Inc., 17 S.W.3d 765, 772-73 (Tex.App.--Austin 2000, no pet.); Garcia v. General Motors Corp., 786 S.W.2d 12 (Tex.App.--San Antonio 1990, no writ). At the July 28, 1997, hearing on IBP's Motion for Protective Order, the trial judge instructed counsel for Escamilla that information in the Guides was not to be used or revealed to parties or witnesses in other cases against IBP until a request to do so was presented to the trial judge.

6

theft of trade secrets;[6] (3) tortious interference by all the lawyers with contractual and confidential relationships between Klumpe and IBP; (4) conversion of the Crewing Guides; (5) civil conspiracy to commit the matters set out in (1), (2), (3) and (4); (6) Klumpe's breach of his employment contract; and (7) Klumpe's breach of the confidential relationship between IBP and Klumpe.

Klumpe and Blackburn filed a joint motion for summary judgment. The motion asserted both affirmative-evidence (traditional) and no-evidence bases. The ground presented in the motion as an affirmative-evidence motion was the affirmative defense of litigation privilege. The no-evidence part of the motion asserted that IBP presented no evidence that (1) the Guides contained trade secrets, (2) the Guides were misappropriated for a commercial use, (3) IBP suffered damages as a result of the conduct of Klumpe and Blackburn, or (4) Klumpe breached his employment agreement. The trial court granted the motion without specifying reasons for its ruling.

IBP asserts[7] that the trial court erred in granting summary judgment because (1) IBP presented evidence creating genuine issues of material fact as to each element of its causes of action challenged by Klumpe and Blackburn's motion for summary judgment, including whether it suffered damages; (2) Klumpe and Blackburn failed to challenge IBP's

---

[6]See TEX. PENAL CODE ANN. § 31.05(b) (Vernon 1994). Further references to the Penal Code will be by reference to "Penal Code § _."

[7]IBP denominates its challenges to the judgment as points of error. We will refer to them as issues. See TEX. R. APP. P. 38.1(e). Further references to a Rule of Appellate Procedure will be by reference to "TRAP_."

7

causes of action for tortious interference with contract, civil damages for theft of trade secrets, conversion, and request for injunctive relief and return of trade secret information; (3) the litigation privilege does not protect the wrongful conduct of Klumpe and Blackburn; and (4) Klumpe and Blackburn presented defective summary judgment evidence in support of their motion.

## II. SUMMARY JUDGMENT STANDARDS
## AND PROCEDURES FOR REVIEW
### A. Procedure

If the trial court does not specify the basis on which it granted summary judgment, the judgment will be affirmed if any of the grounds in the motion are meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380-81 (Tex. 1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. TEX. R. CIV. P. 166a(c).[8] All theories in support of or in opposition to a motion for summary judgment must be presented to the trial court in writing. Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). If a final summary judgment was rendered which included more relief than was requested in the motion, *i.e.*, if some causes of action were not expressly presented to the trial court in the motion but a final judgment as to all parties and issues was nevertheless rendered, then the judgment will be reversed as to all causes of action and issues not expressly urged in the motion for summary judgment and those matters will be remanded for further proceedings. See Bandera Elec. Coop., Inc. v.

[8]Further reference to a Rule of Civil Procedure will by reference to "TRCP_."

8

Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997); Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983); Ross v. Arkwright Mut. Ins. Co., 892 S.W.2d 119, 123-24, 134 (Tex.App.--Houston [14th Dist.] 1994, no writ).

### B.  Affirmative-Evidence (Traditional) Motion
### for Summary Judgment

A party may prevail on a summary judgment motion by conclusively establishing the absence of any genuine issue of a material fact and that the party is entitled to judgment as a matter of law.  TRCP 166a(c).   A fact is material if it affects the outcome of the suit under the substantive law governing the suit. See TRCP 166a(i); Isbell v. Ryan, 983 S.W.2d 335, 338 (Tex.App.--Houston [14th Dist.] 1998, no pet.).  There is a genuine issue as to a material fact if the evidence is such that a reasonable jury could find the fact in favor of the non-moving party. Id. We review the granting of such a conclusively-established summary judgment using the standards set out in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985):

> 1.  The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2.   In determining whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true.

9

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

If the movant for summary judgment is a defendant, then in order to be entitled to summary judgment the movant must disprove at least one of the elements of the non-movant's cause of action, or, alternatively, the movant must prove each element of an affirmative defense. Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

## C. No-evidence Motion for Summary Judgment

After adequate time for discovery, a party may move for a summary judgment as to all or any part of a lawsuit on the basis that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TRCP 166a(a), (b), (i). A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. Aguirre v. South Texas Blood & Tissue Ctr., 2 S.W.3d 454, 456 (Tex.App.--San Antonio 1999, pet. denied); Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 195 (Tex.App.--Amarillo 1999, pet. denied). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Roth, 994 S.W.2d at 195. A no-evidence summary judgment is improperly granted

10

if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact as to the element on which the motion is based.  Id.

III.  ANALYSIS

A.  Affirmative-evidence summary judgment:

Privilege

Klumpe and Blackburn urged in the trial court that what they generally referred to as a "litigation privilege" bars any liability of either of them as to all of IBP's causes of action.  Encompassed within their Motion for Summary Judgment were arguments to the trial court asserting that actions taken in the course of civil litigation are privileged, and communications made during the course of litigation are privileged.

Klumpe and Blackburn's Motion for Summary Judgment stated that the undisputed facts show Klumpe was served with a subpoena duces tecum to produce certain IBP documents in the Escamilla suit, that he took the subpoenaed documents to his attorney Blackburn and that Blackburn provided copies to attorneys for Escamilla and IBP.  The motion then urged, in part, that IBP's entire suit was barred by the litigation privilege because Klumpe and Blackburn's actions were "allegedly wrongful communications made during the course of a judicial proceeding . . ., [and] were part of the Escamilla litigation. Accordingly, those disclosures are absolutely privileged from a later civil action."  Several authorities cited in the brief of Klumpe and Blackburn, such as James v. Brown, 637 S.W.2d 914 (Tex. 1982); Hernandez v. Hayes, 931 S.W.2d 648 (Tex.App.--San Antonio

11

1996, writ denied); and <u>Leigh v. Parker</u>, 740 S.W.2d 101 (Tex.App.--Austin 1987, writ denied), address the absolute privilege accorded to communications made during judicial or quasi-judicial proceedings. Klumpe and Blackburn also cite <u>Ross v. Arkwright Mut. Ins. Co.</u>, 933 S.W.2d 302 (Tex.App.--Houston [14th Dist.] 1996, writ denied), for the proposition that a client cannot be held liable for improper actions of his attorney absent the client's participation in the allegedly wrongful actions of the attorney. Klumpe and Blackburn refer us to <u>Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell v. U.S. Fire Ins. Co.</u>, 639 So.2d 606 (Fla. 1994), for the proposition that absolute immunity must be afforded to any act occurring during the course of any judicial proceeding, regardless of whether the act is a defamatory communication "or other tortious behavior" so long as the act has some relation to the proceeding.

As a general rule, neither a party in a lawsuit nor an attorney representing a party in a lawsuit has a right of recovery under any cause of action against another attorney arising from conduct the second attorney engaged in as part of discharging duties in representing a party in that lawsuit. <u>See</u> <u>Chapman Children's Trust v. Porter & Hedges, L.L.P.</u>, 32 S.W.3d 429, 440 (Tex.App.--Houston [14th Dist.] 2000, pet. denied); <u>Bradt v. West</u>, 892 S.W.2d 56, 71-72 (Tex.App.--Houston [1st Dist.] 1994, writ denied). Not every action taken by an attorney during the litigation process is privileged, however, and determining whether specific actions taken by an attorney in the litigation context are privileged is a fact-intensive question. <u>See</u> <u>Querner v. Rindfuss</u>, 966 S.W.2d 661, 666 (Tex.App.--San Antonio 1998, pet. denied). A lawyer is protected from liability claims only

as to actions which are "within the bounds of the law." See Renfroe v. Jones & Assocs., 947 S.W.2d 285, 288 (Tex.App.--Fort Worth 1997, writ denied); Bradt, 892 S.W.2d at 71.

Communications made in connection with and related to judicial proceedings are absolutely privileged and cannot serve as the basis of a civil action for damages for libel or slander. See James, 637 S.W.2d at 916-17; Bennett v. Computer Assoc. Int'l Inc., 932 S.W.2d 197, 201 (Tex.App.--Amarillo 1996, writ denied). Nor can such communications in connection with judicial proceedings be the basis for any other tort action based upon disclosure of the contents of the communications, even if the legislature has statutorily provided that the contents are privileged and that civil damages are recoverable in the event of unauthorized disclosure of the contents. See Leigh, 740 S.W.2d at 103-04.

Klumpe and Blackburn cite Mitchell v. Chapman, 10 S.W.3d 810 (Tex.App.--Dallas 2000, pet. denied), to support the claim that all their actions, including Klumpe's taking of the Guides from IBP's plant, are absolutely privileged from either tort or contractual liability. We disagree with Klumpe and Blackburn's interpretation of Mitchell. In Mitchell, defendant Chapman was an attorney representing defendants sued by Mitchell in two prior suits. Chapman did not produce documents requested by Mitchell during discovery in the two prior suits. After Mitchell lost the suits he sued Chapman and alleged that Chapman had possession of the requested documents all along, but either negligently or willfully misrepresented that the documents did not exist. In affirming a summary judgment for Chapman, the appellate court noted that the only issue presented was whether Mitchell had a cause of action against Chapman. The court concluded that he did not, because

13

the relationship between the two in the prior suits was adversarial and Chapman owed no duty to Mitchell.  Id. at 811.  The Dallas court did not base its decision on the question of privilege.

We do not consider Mitchell controlling of our decision.  Pleading and asserting that an act is privileged is not the same as asserting that no cause of action exists in favor of the plaintiff on the basis that the defendant owed no duty to the plaintiff.  The burden is on the plaintiff to prove the existence and violation of a legal duty owed by the defendant in order to establish tort liability.  See Coleman v. Hudson Gas & Oil Corp., 455 S.W.2d 701, 702 (Tex. 1970).  The conclusion that a defendant owes no duty to a plaintiff leads to the further conclusion that no cause of action exists in favor of the plaintiff, as was held by the Mitchell court.  Privilege, however, is an affirmative defense to be proved and is in the nature of confession and avoidance.  See Denton Pub. Co. v. Boyd, 460 S.W.2d 881, 884 (Tex. 1970).  Except where the plaintiff's petition shows on its face that the alleged wrongful action is protected by a privilege, the defendant has the burden of proving that the act in question is privileged.  See id.  Moreover, in Mitchell, no assertion was made that Mitchell had a property right in the documents withheld by Chapman.  In the matter we consider, Klumpe and Blackburn do not dispute that the Guides were IBP's property.  The motion of Klumpe and Blackburn did not present a no-duty question to the trial court, and Mitchell is not determinative of their privilege defense.

Certain actions by non-lawyers should be privileged when taken during the course of and in connection with litigation, just as certain such actions of lawyers are privileged.

14

The absolute privilege from civil liability for damages based on the content of communications made by counsel, parties or witnesses in pre-trial and trial proceedings is well established. See James, 637 S.W.2d at 916-17; Bennett, 932 S.W.2d at 201; Leigh, 740 S.W.2d at 103-04. We do not agree, however, with the positions of Klumpe and Blackburn that Texas law does, or should, grant absolute immunity from civil liability for all acts by any party, witness or other person so long as the acts have some relation to a judicial proceeding. See Bennett, 932 S.W.2d at 204-05. We conclude that the Querner court's approach to the litigation privilege of lawyers is appropriate to the privileges accorded both lawyers and non-lawyers: the issue must be determined according to the facts of each case. Querner, 966 S.W.2d at 666.

Trade secrets are rights in the nature of property rights which the law protects through both tort and contract principles. See Hyde Corp. v. Huffines, 314 S.W.2d 763, 769-70 (Tex. 1958). Generally, such principles provide that one who either discloses or uses another's trade secret, without a privilege to do so, is liable for such disclosure or use if the disclosure or use constitutes a breach of confidence reposed in the party disclosing or using the trade secret by the owner of the trade secret. See id. To be actionable, the disclosure or use of the trade secret ordinarily must be to the competitive disadvantage of the owner of the trade secret. See Atlantic Richfield Co. v. Misty Prods., Inc., 820 S.W.2d 414, 422 (Tex.App.--Houston [14th Dist.] 1991, writ denied). Relief granted in an action by the owner of the trade secret may include damages, injunctive relief, or both. See Huffines, 314 S.W.2d at 765.

15

Also, the legislature has provided statutory trade secret protection. Penal Code § 31.05 provides that a person commits a felony offense if, without the owner's effective consent, the person knowingly: (1) steals a trade secret; (2) communicates a copy of an article representing a trade secret; or (3) communicates or transmits a trade secret. "Trade secret" is defined, in part, as all or part of any design, process, procedure or improvement that has value and which the owner has taken measures to prevent from becoming available to persons other than those persons selected by the owner to have access for limited purposes. See Penal Code § 31.05(a)(4). The statutory definition of trade secret comports with the definition used when tort and contract trade secret law is considered. See Huffines, 314 S.W.2d at 776.

The legislature has also provided statutory civil liability for, among other actions, unlawfully appropriating property as described by Penal Code § 31.05. See TEX. CIV. PRAC. & REM. CODE § 134 (Vernon 1997 & Supp. 2001).[9] A person who sustains damages resulting from the unlawful appropriation of property addressed by Penal Code § 31.05 may recover actual damages as well as additional damages not to exceed $1,000. If a person prevails in a suit under section 134, the person shall be awarded court costs and reasonable and necessary attorney's fees. See id. § 134.005.

The affidavit of IBP's personnel manager Crow provided summary judgment evidence that (1) the information contained in the Guides gave IBP an advantage over its

---

[9]Further references to a section of the code will be by reference to "Civil Practice & Remedies Code §_."

competitors who had no knowledge of the Guides or did not use the Guides in their business; (2) IBP considered the Guides a trade secret and protected the Guides' contents by way of various security procedures, such as limiting the number of hard copies of the Guides and by limiting the number of employees with access to the Guides; (3) employees, including Klumpe, signed non-disclosure agreements in regard to "trade secret, technical information or business information" of IBP which was not available to the public; and (4) Klumpe did not have authorization to remove the Guides from IBP's facility.

### 1. Klumpe's privilege defense

Some of the documents requested from Klumpe were crewing guidelines for the machine on which Escamilla was injured, if they were within his possession, custody or control. See TRCP 205. Assuming, *arguendo*, proper service on Klumpe of a subpoena to produce documents listed on the Notice of Deposition, summary judgment evidence created a material fact question as to whether (1) the access granted to Klumpe was sufficient grant of possession, custody or control that Klumpe's taking of the Guides was merely a privileged communication of documents described by the subpoena, or (2) the access granted to Klumpe was not a grant of such possession, custody or control of the Guides, and Klumpe's taking of the Guides was, therefore, an unprivileged "stealing" or taking of documents followed by the privileged communication of the documents. See GTE Comm. Sys. Corp. v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993) (right to possession is a legal right based upon the relationship between party or person from whom a document is sought and the person who has actual possession).

17

In regard to the taking of the documents, Klumpe argues that any confidentiality agreements he entered into with IBP cannot bar him from producing a relevant document in response to a subpoena duces tecum. He quotes language from McMann v. Securities and Exchange Commission, 87 F.2d 377 (2d Cir. 1937), in support of his position: "[I]t hardly needs to be said that nobody by contract, express or implied, can abridge public duties." Id. at 378-79. Based on McMann and similar authorities, Klumpe argues that the Guides, in the final analysis, were discoverable and that his actions, therefore, cannot be the basis for liability.

Both Klumpe's argument and the quote from McMann address the issue of whether a person may be barred from producing discoverable evidence; they do not address the issue of whether a person may be held liable for the method by which the evidence was obtained. Nor do similar authorities cited in Klumpe and Blackburn's brief support the proposition that a person may, with privilege from civil liability, obtain evidence in an unlawful manner. As the McMann opinion further stated, "[T]hough the information was not itself protected, it does not follow that all means of extracting it were lawful." Id. at 379.

The legislature specifically proscribed stealing of trade secrets by Penal Code § 31.05(1) and provided for recovery of damages resulting from violation of that provision of the criminal law. See Civil Practice & Remedies Code, § 134. A subpoena duces tecum[10] does not authorize a witness to illegally seize and remove property of another simply because the property is listed in the subpoena. See McMann, 87 F.2d at 379.

---

[10]We again assume, *arguendo*, proper service of a subpoena duces tecum.

Although an absolute privilege from civil liability is accorded as to claims based on communications by participants in the discovery process, a privilege is not accorded as to claims based on acquiring information or documents illegally. See id.; Renfroe, 947 S.W.2d at 288; Bennett, 932 S.W.2d at 204-05; Bradt, 892 S.W.2d at 71.

We conclude that summary judgment evidence presented a material question of fact as to (1) whether Klumpe obtained the Guides illegally, and (2) Klumpe's civil liability for his actions. Summary judgment was proper as to any claim against Klumpe for furnishing the Guides to Blackburn and Blackburn's faxing of the Guides to Fadduol & Glasheen, including claims that such actions were in violation of Penal Code §§ 31.05(2) or (3). The furnishing and faxing of documents were communications of and disclosures of information by a witness under subpoena in litigation and were subject to Klumpe's claim of absolute privilege. See Leigh, 740 S.W.2d at 103-04. Summary judgment could not have properly been granted on IBP's causes of action based on Klumpe's actions in taking the Guides because such actions were not conclusively established to have been mere privileged communication of documents over which Klumpe had lawful possession, custody or control within the meaning of the Texas Rules of Civil Procedure concerning discovery of documents or tangible things. See TRCP 205; Bennett, 923 S.W.2d at 204-05.

2. Blackburn's privilege defense

Blackburn was acting as Klumpe's personal attorney in regard to the Escamilla suit even before the notice for Klumpe's deposition was served in June, 1997. By an affidavit[11] in support of his motion for summary judgment, Klumpe disclosed that when he was served with the notice and subpoena in regard to his deposition, he "gathered the documents requested by the subpoena duces tecum, and took the documents to my attorney, Jeff Blackburn."

Before Blackburn faxed the Guides to Fadduol & Glasheen on Sunday, June 29th, he received a copy of IBP's objections to production of certain categories of documents listed in the notice for Klumpe's deposition. The objections specifically referenced objection to production of "any IBP, inc. [sic] generated, produced or prepared documents or documents which are the property of IBP . . . ." The objection specifically addressed the requested production of documents showing the crewing guidelines for the hock-cutter which injured Escamilla. The objection, in part, stated that the request "seeks disclosure of sensitive proprietary business information and trade secrets which are exempt and privileged from discovery under TEX. R. CIV. EVID. 507."

Blackburn testified in his deposition that he was aware of IBP's claim that certain of the documents requested by Fadduol & Glasheen were IBP's documents and allegedly contained confidential information. Blackburn further testified that he would not voluntarily give the documents in his possession back to IBP.

---

[11]By issue 4, IBP challenges the competency of Klumpe's affidavit. Because of our disposition of IBP's other issues we need not and do not address the question. See TEX. R. APP. P. 47.1.

20

Blackburn was representing his client Klumpe in connection with the Escamilla suit, although Klumpe was not a party to the suit.[12] Blackburn is protected by a privilege from civil liability claims based on his communication of the Guides as part of the discovery process, and as to any other actions in such representation "within the bounds of the law." See McMann, 87 F.2d at 379; Renfroe, 947 S.W.2d at 288; Bradt, 892 S.W.2d at 71. As to the latter issue, IBP urges, in part, that Blackburn's actions were not within the bounds of the law because he directly violated Penal Code § 31.05 by faxing the Guides to Fadduol & Glasheen; and also because he conspired with Klumpe and Fadduol & Glasheen to have Klumpe take the Guides in violation of Penal Code § 31.05.

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. See Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983); Carroll v. Timmers Chevrolet, Inc., 592 S.W.2d 922, 925 (Tex. 1979). Basically, the defining characteristic is that either the object to be accomplished, or the means by which the object is accomplished, is unlawful. Massey, 652 S.W.2d at 934.

IBP asserts that its allegations of a conspiracy to have Klumpe illegally take the Guides is supported by evidence creating a question of material fact, including evidence that (1) Blackburn referred Escamilla to Fadduol & Glasheen in regard to Escamilla's injury, (2) Blackburn was to receive a referral fee if Escamilla's claim against IBP was

---

[12]Blackburn does not claim that he was an attorney in the Escamilla suit representing a party adverse to IBP, even though he was to receive a referral fee from Fadduol & Glasheen if the Escamilla suit was successful.

21

successful, (3) members of the Fadduol & Glasheen law firm knew of the Guides and had previously unsuccessfully attempted to obtain discovery of the Guides in other lawsuits, (4) members of the law firm met with Blackburn and Klumpe on various occasions between Escamilla's injury in April, 1997, and the June 29th faxing of the Guides by Blackburn, (5) at least one of the meetings included Klumpe's stepson, Escamilla, (6) the law firm requested "informal" discovery of *all* documents Klumpe had delivered to Blackburn after the firm and Blackburn had been served with IBP's objections to production of crewing guidelines for the hock-cutter machine causing Escamilla's injury,[13] and (7) Blackburn subsequently faxed all 18 pages of the Guides on the evening before Blackburn was to meet with IBP's attorney to review documents in the possession of Blackburn and Klumpe which might be responsive to the deposition notice.

We take note of the concept that the law should not encourage one suit breeding twenty. Bradt, 892 S.W.2d at 60. The Bradt court went on to state that an attorney may make use of any *right* on behalf of a client which the attorney deems necessary or proper without making the attorney liable in damages. Id. See also Texas Beef Cattle Co., 921 S.W.2d 203, 211 (Tex. 1996); Montgomery v. Phillips Petroleum Co., 49 S.W.2d 967, 972 (Tex.Civ.App.--Amarillo 1932, writ ref'd). We do not disagree with such proposition. But, as previously noted, we do not agree that a person under subpoena has a privilege to

_____

[13]Fadduol & Glasheen attorney Carver denied having seen IBP's objections to the documents subpoenaed for production at Klumpe's deposition prior to his letter to Blackburn requesting informal discovery of all documents Klumpe had furnished to Blackburn. Carver denied having had telephone contact with Blackburn on June 27th, 28th, or 29th.

22

violate a provision of the penal code in obtaining evidence merely because that evidence is listed in a subpoena duces tecum. Nor do we agree that, except as to communications in connection with the litigation process as previously discussed, an attorney representing a client in connection with litigation has a duty to a client or a categorical privilege to (1) violate a provision of the penal code or (2) conspire to have another do so. See Poole v. Houston & T.C. Ry., 58 Tex. 134, 137-38 (1882) (where a lawyer acting for his client participates in wrongful activities, his action in doing so is foreign to the duties of an attorney); Querner, 966 S.W.2d at 666.

The claim against Blackburn for faxing the Guides to Fadduol & Glasheen is based on his communication and disclosure of the alleged trade secret contents of the Guides. As against a claim for civil liability, Blackburn was absolutely privileged to make such disclosure because he made the disclosure as part of discovery proceedings in pending litigation, even if he transmitted the Guides in violation of Penal Code § 31.05. See James, 637 S.W.2d at 916-17; Bennett, 932 S.W.2d at 201; Leigh, 740 S.W.2d at 103-04.

The claim against Blackburn for conspiring to have Klumpe take a copy of IBP's Guides, however, is not a claim based on the content of a communication in connection with judicial proceedings because Klumpe's access to the documents was not conclusively established to have been such lawful possession, custody or control within the meaning of the Texas Rules of Civil Procedure that his taking of them was merely an integral part of privileged disclosure of documents. See TRCP 205; Bennett, 923 S.W.2d at 204-05.

23

The summary judgment record before us evidences an unusual set of facts. We agree with IBP that, under the record presented and summary judgment standards, a reasonable jury could infer that Blackburn conspired to have Klumpe illegally take a copy of IBP's Guides. See Penal Code §§ 31.05(a)(4),(b)(1).

Blackburn's assertion of privilege was a proper ground for the trial court to grant his motion for summary judgment as to any cause of action based on allegations that he faxed the Guides in violation of law. Summary judgment could not have properly been granted to Blackburn, however, as to causes of action based upon Klumpe's allegedly illegal taking of the Guides and Blackburn's alleged complicity in that action.

## B. No-Evidence Motion

### 1. Misappropriation of trade secrets:
### "use" of the Guides

Klumpe and Blackburn sought summary judgment as to IBP's claim for misappropriation of trade secrets on the basis that IBP presented no evidence that the Guides were misappropriated for a commercial use. Klumpe and Blackburn cite Taco Cabana Int'l v. Two Pesos, Inc., 932 F.2d 1113, 1123 (5th Cir. 1991), for the elements of a misappropriation cause of action being: (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages. Klumpe and Blackburn then cite Misty Products, Inc., 820 S.W.2d at

24

422, for authority that the third element of the cause of action requires a commercial use of the trade secret by which the offending party seeks to profit.

One aspect of IBP's issue on appeal is that a cause of action for misappropriation of trade secrets requires only unauthorized disclosure of the trade secret by the offending party, as noted in Huffines. See Huffines, 314 S.W.2d at 769-70. But, even assuming that merely disclosing a trade secret satisfies the disclosure or use element of the cause of action, we have previously determined that the disclosures which IBP claims were made by Klumpe and Blackburn were absolutely privileged. Because the disclosures complained of were privileged, they cannot form the basis of civil liability for damages. See James, 637 S.W.2d at 916-17; Bennett, 932 S.W.2d at 201; Leigh, 740 S.W.2d at 103-04.

IBP next references Garth v. Staktek Corp. , 876 S.W.2d 545 (Tex.App.--Austin 1994, writ dism'd w.o.j.) as authority for the proposition that if proof of a commercial use is required, merely exercising dominion and control over the trade secret is such a commercial use. See id. at 548. In Garth, however, the party charged with misappropriation of trade secrets used the trade secret to complete a basic design for a competing device, consulted a patent attorney about protection of the competing device, and sought financing for the competing product from investors. The appellate court approved the trial court's holding that using a trade secret to design a competing product for which a patent application was then submitted comprised a "commercial use." The appellate court also noted that using the product designed through use of the trade secret

25

to procure financing for development of the product was a "commercial use" of the trade secret. Id.

IBP offered no proof that the Guides were used in any manner which would be or was intended to be in competition with IBP's business or which would impair the value of the Guides commercially. The facts of the Garth case do not correspond with those before us. We conclude that IBP did not present summary judgment evidence of either a proscribed commercial use of the Guides or of a non-privileged disclosure of the Guides encompassed within meaning of those terms as used in connection with a cause of action for misappropriation of trade secrets. See id; Misty Products, Inc., 820 S.W.2d at 422. Summary judgment was properly granted as to IBP's cause of action for misappropriation of trade secrets.

## 2. Damages

IBP asserts that it segregated and presented evidence of attorney's fees incurred in the Escamilla suit which were a natural and proximate consequence of the wrongful conduct of Klumpe and Blackburn. IBP urges that such evidence is sufficient to create a material issue of fact. IBP also asserts that Klumpe and Blackburn's motion for summary judgment did not address its request for injunctive relief, and for that reason, also, the summary judgment could not properly have been granted on the basis that there was no evidence of damages.

26

Klumpe and Blackburn assert that IBP's attorney's fees incurred in filing an amended motion for protective order in the Escamilla suit are not recoverable as damages in a separate suit, and that IBP, therefore, has offered no evidence of the damages element of its cause of action. In making their assertion, Klumpe and Blackburn cite authority for the general rule that a litigant cannot recover attorney's fees from an adverse party in litigation, absent a contract or statutory authority. They reference <u>Nationwide Mutual Ins. Co. v. Holmes</u>, 842 S.W.2d 335 (Tex.App.--San Antonio 1992, writ denied), also cited by IBP, for the proposition that the general rule prevents attorney's fees incurred in prior litigation from being recovered as damages in a subsequent suit.

Generally, attorney's fees incurred by a party to litigation are not recoverable from an adversary in that litigation unless provided for by statute or contract. <u>See</u> <u>Travelers Indem. Co. v. Mayfield</u>, 923 S.W.2d 590, 593 (Tex. 1996); <u>Turner v. Turner</u>, 385 S.W.2d 230, 233 (Tex. 1964); <u>City of Amarillo v. Glick</u>, 991 S.W.2d 14, 16 (Tex.App.--Amarillo 1997, no pet.); <u>In re Striegler</u>, 915 S.W.2d 629, 640 (Tex.App.--Amarillo 1996, writ denied). One reason for such rule is the potential for skewing of the litigation process and potential for abuse of the process that allowing recovery of attorney's fees from an adversary would engender. <u>See</u> <u>Mayfield</u>, 923 S.W.2d at 595. Recovery of reasonable and necessary attorney's fees incurred in litigation-related matters has been allowed, however, in certain instances, absent statutory or contractual basis. For example, to recover in a suit alleging that an adversary maliciously prosecuted a civil claim, the plaintiff must establish that special damages were suffered. <u>See</u> <u>Texas Beef Cattle Co.</u>, 921 S.W.2d at 207).

27

Ordinary losses incident to defending a civil suit, such as inconvenience and attorney's fees do not qualify as special damages, but once the special injury hurdle has been cleared, that injury serves as a threshold for recovery of the full range of damages incurred as a result of the malicious litigation. Id. at 208-09. And, when a defendant has caused attorneys fees to be incurred in defense of a criminal charge which was maliciously prosecuted, attorney's fees in defending the prior criminal charge are recoverable in the malicious prosecution suit as damages. See J. C. Penney Co., Inc. v. Ruth, 982 S.W.2d 586, 587 (Tex.App.--Texarkana 1998, no pet.) ($20,000 in actual damages, $5,000 in attorney's fees, and $50,000 in exemplary damages awarded); Eans v. Grocer Supply Co., Inc., 580 S.W.2d 17, 23 (Tex.Civ.App.--Houston [1st Dist.] 1979, no writ). Attorney's fees incurred in attempting to persuade an insurance company to indemnify an insured have been held to be recoverable as actual damages under the Deceptive Trade Practices Act[14] in a subsequent suit. See Holmes, 842 S.W.2d at 341-42. In Powell v. Narried, 463 S.W.2d 43 (Tex.Civ.App.--El Paso 1971, writ ref'd n.r.e.), defendant sought by a cross-action [sic] to recover attorney's fees for defense of the original suit. The court of appeals did not allow recovery of attorney's fees for defending the original suit, although the general rule as to recovery of such fees was stated to be:

> [W]here the natural and proximate consequence of a wrongful act has been to involve a plaintiff in litigation with others, there may, as a general rule, be a recovery in damages of the reasonable expenses incurred in such prior litigation, against the author of such act, including the compensation for attorney's fees; but such expenses must be the natural and proximate consequence of the injury complained of and must have been incurred

---

[14]See TEX. BUS & COM. CODE ANN. §§ 17.45 et.seq. (Vernon 1987 & Supp. 2001).

28

necessarily and in good faith, and the amount thereof must be reasonable.

Id. The trial court's award for attorney's fees was reversed for (1) failure of the plaintiff-appellee to segregate fees for defense of the original claim from fees resulting from the actions of appellee's attorneys in prosecuting the third party claim, (2) failure of plaintiff-appellee to prove the reasonableness and necessity of the fees, and (3) the cross-action did not qualify as a "prior suit." Id. See also Estate of Arlitt v. Paterson, 995 S.W.2d 713, 721 (Tex.App.–San Antonio 1999, pet. denied); Standard Fire Ins. Co. v. Stephenson, 963 S.W.2d 81, 90 (Tex.App.--Beaumont 1997, no pet.); Texas Beef Cattle Co. v. Green, 883 S.W.2d 415, 430 (Tex.App.--Beaumont 1994), *rev'd on other grounds*, 921 S.W.2d 203 (Tex. 1996); Baja Energy, Inc. v. Ball, 669 S.W.2d 836, 839 (Tex.App.--Eastland 1984, no writ).

Promptly after he learned that the Guides had been taken by Klumpe and faxed to Fadduol & Glasheen, IBP's attorney in the Escamilla suit filed an amended motion for protective order seeking to limit further disclosure and use of the Guides and their content. The evidence segregated attorney's fees for that motion from fees for other discovery matters in and defense of the Escamilla suit. Klumpe was not an adversary to IBP in the Escamilla suit; he was not a party to the suit. The fees sought as damages are not fees incurred in prosecution of or defense of the IBP suit before us. We conclude that the summary judgment evidence created a material fact issue as to whether Klumpe's actions in taking the Guides resulted in damages to IBP in the nature of additional attorney's fees. See Penal Code § 31.05(b); Civil Practice & Remedies Code §§134.003(a), 134.005(a);

29

Holmes, 842 S.W.2d at 341-42; Powell, 463 S.W.2d at 46. Final summary judgment could not have been properly granted on Klumpe and Blackburn's assertion that IBP presented no evidence of damages resulting from the taking of the Guides by Klumpe. See Gilchrist, 946 S.W.2d at 337; Ross, 892 S.W.2d at 123-24, 134.

Furthermore, we agree with IBP that the no-evidence motion did not expressly address IBP's request for equitable relief. The trial court could not have granted summary judgment as to IBP's equitable relief claims because Klumpe and Blackburn did not present those to the trial court in writing as a basis for the summary judgment being sought. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996).

### C. Breach of contract

IBP contends that the summary judgment evidence created a material fact issue as to Klumpe's breach of his employment agreements. In response to Klumpe's motion for summary judgment, IBP provided a copy of an employment agreement signed by Klumpe. The agreement states that:

> I, [Steven Klumpe], in consideration of either (a) the continuation of my employment by Employer (which shall mean IBP, inc.[sic], herein called the Company, or any corporation or company of which the Company owns, directly or indirectly, more than half the voting stock or other ownership interest, herein called Subsidiary) for a period of time not less than one month from the date hereof or (b) my employment by Employer as a new employee, and in consideration of the salary or wages received by me during such employment, hereby agree as follows:
>
> 1. Other than as required in my duties to Employer, I shall not disclose to anyone or use either during or after my employment, except with written consent of Employer, any trade secret, technical information

30

or business information of Employer which information is not available to the public. This same obligation shall apply to trade secrets of any third party as learned by me during my employment and with respect to which Employer has an obligation to maintain secrecy. Technical and business information of any previous employer or other third party which I may disclose to Employer shall be limited to that which was acquired legitimately and disclosed to me without restriction as to secrecy.

2.    ....

The affidavit of James Crow averred that Klumpe did not have authorization to remove the Guides from IBP's Amarillo facility. We have already determined that IBP's evidence raised a material issue of fact as to the Guides' trade secret status. The evidence raised a genuine issue of material fact as to whether (1) Klumpe had a contractual obligation not to remove the Guides without authorization, and whether (2) Klumpe breached such an obligation by a non-privileged taking of the Guides, as opposed to the privileged communication of documents pursuant to subpoena if he had been in possession, custody or control of the documents within the purview of discovery rules. See TRCP 205. Summary judgment could not have been properly granted on the express ground that IBP presented no evidence that Klumpe breached his employment agreement by taking the Guides. Summary judgment was properly granted as to IBP's claim that Klumpe breached his employment agreement by disclosing the Guides and content of the Guides to Blackburn. Such disclosure was privileged. See Leigh, 740 S.W.2d at 103-04.

C.  Causes of action not expressly presented to

trial court by Motion for Summary Judgment

31

Klumpe and Blackburn's motion for summary judgment did not expressly present grounds to the trial court for summary judgment as to IBP's claims for theft of trade secrets in violation of Penal Code § 31.05 and civil liability for such theft, intentional interference with contract, conversion or promissory estoppel, except to the extent such causes would be barred had we sustained Klumpe and Blackburn's claims of privilege to all of the causes of action. We have not done so. Accordingly, we reverse the summary judgment in favor of both Klumpe and Blackburn as to the causes of action not expressly presented to the trial court and remand those causes for further proceedings. See Gilchrist, 946 S.W.2d at 337; Chessher, 658 S.W.2d at 564; Ross, 892 S.W.2d at 123-24, 134.

CONCLUSION

The summary judgment in favor of both Klumpe and Blackburn is affirmed as to those parts of IBP's causes of action based upon Klumpe's disclosure of the Guides to Blackburn and Blackburn's faxing of the Guides to Fadduol & Glasheen. The summary judgment is also affirmed as to IBP's cause of action for misappropriation of trade secrets. The summary judgment is reversed as to all other claims and causes of action pled by IBP, and the cause is remanded for further proceedings in accordance with this opinion. TRAP 43.2(d).


Phil Johnson
Justice


32

Publish.