Opinion filed April 15,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00017-CV

                                                    __________

 

 

                     RAWHIDE
MESA-PARTNERS, LTD., Appellant

 

                                                       
V.

       BROWN McCARROLL,
L.L.P. AND LYNN BUTLER, Appellees

 



 

                                   On
Appeal from the 419th District Court

 

                                                            Travis
County, Texas

 

                                           Trial Court
Cause No. D-1-GN-08-001712

 



 

O
P I N I O N

This
is a fraud claim arising out of a commercial real estate lease.  Rawhide
Mesa-Partners, Ltd. sued Brown McCarroll, L.L.P., Kell Mercer[1],
and Lynn Butler alleging negligence, gross negligence, breach of fiduciary
duty, and violations of the Texas Deceptive Trade Practices Act[2]. 
The defendants filed a combination traditional and no-evidence motion for
summary judgment.  The trial court granted their motion and entered a
take-nothing judgment.  We affirm.

I.  Background
Facts

Rawhide
owns a shopping center in Austin, Texas.  Robert Stern is a partner of Rawhide
and handles negotiations with potential tenants.  Cynthia Prieser owns CR
Bagels.  It was having difficulty with its landlord and Prieser hired Brown
McCarroll to represent CR Bagels.  Butler tried to negotiate a work-out with
the landlord but when it became apparent that this was impossible, Prieser
approached Stern to lease space in Rawhide’s shopping center.  Prieser asked
Brown McCarroll to assist with the Rawhide negotiations.  Brown McCarroll had
never represented Rawhide, but Nikelle Meade, an attorney with Brown McCarroll,
had represented Stern on a personal matter.  Meade contacted Stern by email to
clear the representation.  They exchanged the following emails:

March 3, 2006 Meade
to Stern:

I am writing to
inquire about a potential tenant of yours, CR Bagels.  One of the lawyers in
our firm has been approached by them to represent them in the negotiation of
their lease with you.  Since you are a previous client of the firm, we need
your clearance for the firm to represent CR Bagels in this matter.  Do you have
any objection to our representation of them in this matter?  Brad Stein will be
the lawyer representing them?

 

March 4, 2006 Stern
to Meade:

I assume you are
speaking of Cynthia Prieser of Big Apple Bagels.  I have no objection to your
representation of her and am happy that she has hired a good lawyer to represent
her.  Please have Brad send me comments and copy our lawyer Kevin Childs as
well. …

 

Please advise Brad
that I want to be sure Cynthia is totally on board with the business terms and
I receive her financial information and get her deal approved before either one
of us spend money on lawyers negotiating the lease.  

 

Also, while I am a
small owner 1.8%, and have input, I do not make the final decisions.  This
partnership has just concluded a 2½ year costly litigation with a prior tenant
that made frivolous claims similar to ones I have heard Cynthia is making with
respect to her current location and its problems (I’m not saying her claims are
inaccurate I know nothing about that deal).  We were the prevailing party and
are now collecting on a judgment that included legal fees in excess of 100K.

 

What I’m trying to
say is, that while we want Cynthia as a tenant and I personally feel she will
be successful, the General Partner in California has indicated he will not have
much appetite to deviate from his lease that obviously incorporates some
clauses to protect us from future litigation.

 

Since I have worked
with you before and respect everyone’s time, and money spent on legal fees, I
feel it’s important that you know this up front.

 

March 6, 2006 Meade
to Stern:

Rob, you are correct
that our client in the matter will be Cynthia and Big Apple Bagels.  Thank you
for this background information.  It is helpful to know where the parties are
coming from.  Brad will let Cynthia know your desire about having her on board
with the terms and financials before much legal work is done.  We will also be
sure to copy both you and Kevin on correspondence.  Hopefully, we can make this
a smooth and quick transaction.

 

Brown
McCarroll filed a petition for bankruptcy on behalf of CR Bagels on March 8,
2006.  Rawhide was unaware of this filing.  The lease negotiations continued
and CR Bagels and Rawhide entered into a lease on April 11.  On June 29, Brown
McCarroll filed a motion in bankruptcy court to assume the Rawhide Lease.  Rawhide
was not given notice of this motion.

CR
Bagels defaulted on the lease in September.  Butler represented CR Bagels in
the subsequent conversations with Rawhide.  In November, Rawhide locked CR
Bagels out for nonpayment of rent.  Butler advised Rawhide that the lock-out
violated the automatic stay.  This was Rawhide’s first notice of CR Bagels’
bankruptcy proceeding. Rawhide then hired bankruptcy counsel and removed CR Bagels
from the shopping center.

II. 
Issues

Rawhide challenges the trial court’s judgment with four
issues.  Rawhide contends generally that the trial court erred by granting
summary judgment and then, specifically, argues that the trial court erred by
applying a privity requirement and the doctrine of judicial immunity to a fraud
by nondisclosure claim, by holding that the lawyers did not have a duty of
disclosure to a former client, and by finding that there was no fact question
on its damages claim.   

III.  Discussion

Rawhide’s
claim is based upon the premise that, had it known of CR Bagels’ bankruptcy
filing, it would not have executed the lease agreement and upon the argument
that Butler or Brown McCarroll had a duty to disclose this fact.  They respond
that no such duty exists.  Our initial inquiry, therefore, is whether a duty to
disclose was triggered in this instance.

A.    
Standard of Review. 

We
review traditional motions for summary judgment with a well-settled,
multifaceted standard of review.  Questions of law are reviewed de novo.  St.
Paul Ins. Co. v. Tex. Dep’t of Transp., 999 S.W.2d 881 (Tex. App.—Austin
1999, pet. denied).  To determine if a fact question exists, we consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all the evidence presented.  Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 755 (Tex. 2007).  We must consider all the evidence in the
light most favorable to the nonmovant, indulging all reasonable inferences in
favor of the nonmovant, and determine whether the movant proved that there were
no genuine issues of material fact and that it was entitled to judgment as a
matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex.
1985).  

We
review a no-evidence summary judgment under the same standard as a directed
verdict.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex.
2003).  We examine the record in the light most favorable to the nonmovant and
credit evidence favorable to the nonmovant if reasonable jurors could, and
disregard all contrary evidence and inferences unless reasonable jurors could
not.  Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).

B.    
Qualified Immunity.

Rawhide
recognizes that lawyers are generally immune from liability to the opposing
party but argues that this immunity is limited and does not extend to actions
that are foreign to the duties of an attorney.  See, e.g., Toles v. Toles,
113 S.W.3d 899, 911 (Tex. App.—Dallas 2003, no pet.).  For example, Texas
courts have consistently held that lawyers are liable for fraudulent or
criminal activity.[3] 
Rawhide does not contend that the lawyers made an affirmative misrepresentation
but, instead, contends that they fraudulently withheld CR Bagels’ financial
information.  To establish fraud by nondisclosure, a claimant must establish:

            1. 
The defendant concealed or failed to disclose a material fact within its
knowledge;

 

            2. 
When it had a duty to disclose the fact;

 

            3. 
The defendant intended to induce the claimant to take some action by concealing
or failing to disclose the fact; and

 

            4. 
The claimant suffered damages because it acted without knowledge of the
undisputed fact.

 

Bradford v.
Vento, 48 S.W.3d 749, 755 (Tex. 2001).  Whether a duty to speak exists is a
question of law.  Id.

Rawhide
asserts three reasons why Butler and Brown McCarroll (collectively the lawyers)
had a duty to disclose CR Bagels’ bankruptcy filing:

            1.  There
was a fiduciary duty between the lawyers and Stern;

 

            2. The
lawyers made partial and ambiguous statements that created a false impression
of CR Bagels’ ability to pay rent; and

 

            3.  The
lawyers knew that Stern was ignorant of CR Bagels’ bankruptcy filing and that
he did not have an equal opportunity to discover the truth.

 

The trial court
correctly found that these did not give rise to a duty of disclosure.

            1. 
Fiduciary Duty.

Rawhide
argues that there was a formal or informal fiduciary relationship between the
lawyers and Stern and, therefore, that there was a fiduciary relationship
between the lawyers and Stern’s partnership, Rawhide.  The attorney-client
relationship gives rise to a fiduciary duty as a matter of law.  Burrow v.
Arce, 997 S.W.2d 229 (Tex. 1999).  Stern testified that he had had an
attorney-client relationship with Brown McCarroll since May 2005, that he
developed a close confidential relationship with the firm and came to rely upon
their advice and counsel, and that he trusted the firm to look out for his
business interests in his dealings with them.  This relationship apparently grew
out of one representation.  When Stern was asked about Rawhide’s prior
relationship with Brown McCarroll, he testified that he had worked with Meade
on an unrelated real estate transaction in 2005, that she represented him
personally, and that she was not representing him in 2006. Stern did not
describe any other engagement, and none is otherwise mentioned in the record.

Even
if we assume that this single representation provided sufficient basis for
Stern’s continued confidence in the firm and its members, it is undisputed that
Meade represented him personally in 2005.  A fiduciary duty to Stern does not
automatically inure to Rawhide’s benefit.  A partnership is a legal entity
separate from its partners.  ISO Production Mgmt. 1982, Ltd. v. M &
L Oil and Gas Exploration, Inc., 768 S.W.2d 354, 355 (Tex. App.—Waco 1989,
no pet); cf. Gamboa v. Shaw, 956 S.W.2d 662 (Tex. App.—San Antonio 1997,
no writ) (lawyer rendering legal services to a corporation does not have a duty
to the corporation’s shareholders).  

A
fiduciary duty is the highest duty recognized by law.  Accordingly, it is not
lightly created.  The lawyers had no prior attorney-client relationship with
Rawhide. And they were in an adversarial posture with Rawhide in the lease
negotiations – not only were they representing a third party, but Rawhide had
its own attorney.  Consequently, no formal fiduciary relationship existed.  See
Patrick v. Howard, 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ)
(noting that the adversarial relationship between the parties was the
antithesis of a confidential relationship); see also Schlumberger Tech.
Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997) (fact that one party
relied upon the other to obtain the best price for its interest did not
transfer an arm’s-length transaction into a fiduciary relationship).

Texas courts have also recognized that an
informal relationship can give rise to a fiduciary duty.  This can arise from a
moral, social, domestic, or purely personal relationship of trust and confidence. 
Lundy v. Masson, 260 S.W.3d 482, 502 (Tex. App.—Houston [14th Dist.]
2008, pet. denied).  But, the mere fact that one party subjectively trusts
another does not, alone, indicate that confidence is placed in another in the
sense demanded by fiduciary relationships because something apart from the
transaction between the parties is required.  Kline v. O’Quinn, 874
S.W.2d 776, 786 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  A
confidential relationship exists when one party is, in fact, accustomed to
being guided by the judgment or advice of the other, or is justified in the
belief that such party will act in its interest.  Thames v. Johnson, 614
S.W.2d 612, 614 (Tex. Civ. App.—Texarkana 1981, no writ).  The only evidence of
a confidential relationship was Stern’s testimony that he trusted the firm. 
This is no evidence that a confidential relationship existed between the
lawyers and Rawhide.  The trial court, therefore, did not err by finding that
there was no fiduciary duty between the lawyers and Rawhide.

2.  False Impression.

Rawhide next argues that the lawyers led it
to believe that CR Bagels was able to pay its rent.  Rawhide reasons that the
lawyers knew it wanted a tenant who could make rent payments and knew that CR
Bagels had filed for bankruptcy.  Because the lawyers did not disclose the
bankruptcy, they effectively represented that CR Bagels could make its monthly
rent payments.  

Rawhide relies upon cases such as Citizens
National Bank v. Allen Rae Investments, Inc., 142 S.W.3d 459 (Tex.
App.—Fort Worth 2004, no pet.), to argue that a duty to disclose arose.  In that
case, the plaintiffs were attempting to secure financing to build and operate a
Motel 6.  A bank business development officer told them that the bank could not
finance their project because it needed a larger down payment than they wanted
to make, but he then suggested that they consider building a Bed & Bath
Inn.  Id. at 468.  The officer made this recommendation even though he
had recently attended a Bed & Bath presentation and had doubts about its
viability.  Id.  The court held that, when the bank officer pitched Bed
& Bath to the plaintiffs, he had a duty to fully disclose what he knew
about its financial condition.  Id. at 477.

Here, there is no evidence that the lawyers
made any representation about CR Bagels’ financial condition or that Stern ever
asked them for any financial information.  Stern told Meade:  “Please advise
Brad that I want to be sure Cynthia is totally on board with the business terms
and I receive her financial information and get her deal approved before either
one of us spend money on lawyers negotiating the lease.”  The record does not
indicate what financial representations Prieser made or if the lawyers were
aware of those representations.  Because there was no evidence that the lawyers
made a financial representation or were aware of a misrepresentation by Prieser,
there was no duty to disclose the bankruptcy filing.  

Moreover, we note that if a lawyer’s
representation of a client in a business transaction constitutes a
representation that the client is financially capable of performing its
contractual obligations, the lawyer becomes a surety.  In that instance, it
would become difficult, if not impossible, for clients facing economic
difficulty to secure legal representation.  It would also place the lawyer in
the impossible situation of representing two opposing sides in a business
transaction.  See Alpert v. Crain, Caton & James, P.C., 178 S.W.3d
398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (“If an attorney
could be held liable to an opposing party for statements made or actions taken
in the course of representing his client, he would be forced constantly to
balance his own potential exposure against his client’s best interest.”).  Not
only would this place an unacceptable burden on the lawyer, it would denigrate
the quality of legal representation any client with less than a perfect
financial statement could receive.  See Gamboa, 956 S.W.2d at 665
(explaining the need for privity between attorney and legal malpractice claimant).




            3.  Stern’s Knowledge.

Finally, Rawhide argues that the lawyers knew it was
ignorant of CR Bagels’ bankruptcy filing.  First, we note that the filing was a
matter of public record, thus this is not information that Rawhide could have
learned only from the lawyers.[4] 
Next, as noted above, Stern wanted to reach a deal with Prieser before using
lawyers.  Because there is no evidence that the lawyers knew what financial
representations Prieser had made, Rawhide’s position would necessarily require
that they contact Stern and confirm his knowledge before beginning negotiation
of the lease.  This would create a conflict of interest for the lawyers.  The
trial court did not err by finding that the lawyers had no duty to advise
Rawhide of the bankruptcy filing.  

Because
the lawyers had no duty to Rawhide, the trial court correctly granted their
motion for summary judgment.  Rawhide’s Issues One, Two, and Three are
overruled.   This holding makes it unnecessary to address Rawhide’s fourth issue.

IV. 
Conclusion

The judgment of the trial court is affirmed.

 

            

RICK STRANGE

                                                                                    JUSTICE

 

April 15, 2011

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Rawhide subsequently filed in this court a motion to
dismiss its appeal as to Mercer only.  We granted that motion and dismissed the
appeal as to Mercer on July 1, 2010. 





                [2]
See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (Vernon
2011).





                [3]See, e.g., Toles,
113 S.W.3d at 911 (a lawyer is not shielded from liability when it participates
in fraudulent activities); IBP, Inc. v. Klumpe, 101 S.W.3d 461, 470
(Tex. App.—Amarillo 2001, pet. denied) (a lawyer’s immunity extends only to actions
that are within the bounds of the law); McKnight v. Riddle & Brown, P.C.,
877 S.W.2d 59, 61 (Tex. App.—Tyler 1994, writ denied) (lawyers are liable for
fraudulent activities).





                [4]We need not decide if Rawhide was charged with
constructive notice of CR Bagels’ bankruptcy filing.  See Shell Oil Co. v.
Ross, No. 01-08-00713-CV, 2010 WL 670549 at *14 (Tex. App.—Houston [1st
Dist.] 2010, pet. filed) (discussing when public records establish constructive
notice).